**Edward F. DYER, Plaintiff,**

v.

**David V. ROBINSON, Defendant.**

**No. 92–1705 (PJM).**

United States District Court, D. Maryland.

May 20, 1994.

Arthur J. Whittle, Columbia, MD, for plaintiff.

Daniel R. Lanier, Baltimore, MD, for defendant.

### OPINION

MESSITTE, District Judge.

#### I.

Plaintiff Edward F. Dyer has brought a defamation/invasion of privacy suit against Defendant David V. Robinson, basing this Court's jurisdiction on the parties' allegedly diverse citizenship. *See* 28 U.S.C. § 1332. Plaintiff, a citizen of Maryland, contends that Defendant is a citizen of North Carolina.

Defendant answers that he is in fact domiciled in, hence a "citizen" of Maryland, citing this State as his "domicile of origin" and the fact that he owns and pays taxes on certain real estate in Howard County. He has thus filed a motion to dismiss the case on the grounds that lack of diversity of citizenship deprives the Court of subject matter jurisdiction.

Because certain facts pertaining to Defendant's citizenship are in dispute, the Court has deferred deciding Defendant's motion to dismiss and has calendared the matter for a preliminary evidentiary hearing before the Court. *See Sligh v. Doe,* 596 F.2d 1169 (4th Cir.1979). Defendant is obviously correct, however, that the Court lacks subject matter jurisdiction and must dismiss the case if no diversity of citizenship is found, a matter which will be resolved at the preliminary hearing. The concern of the Court and parties at present is the matter of burden of proof on the issue of citizenship and the effect that certain presumptions might have on that determination.

#### II.

Apart from the fact that this is a suit based on alleged defamation and invasion of privacy, little more need be said about the merits of this dispute.

The relevant jurisdictional facts are these:

Plaintiff is indisputably domiciled, in, therefore a "citizen" of the State of Maryland.

Defendant was apparently born and raised in Maryland and since 1945 has maintained a residence in Laurel. He inherited the residence upon his mother's death in June of 1986, pays property taxes to this State and spends approximately $20,000 per year here for its care and maintenance.

According to Plaintiff, however, Defendant has been physically located in and, with his family, a resident of North Carolina since 1988. Defendant allegedly conducts substantial business in North Carolina, has constructed houses there for his use and that of his family, keeps his personal effects there, and lists North Carolina as his residence on all income tax filings with the Internal Revenue Service.

Defendant, rejoining, describes his residence in North Carolina as a "vacation home," alleges that he has returned to Maryland approximately 15–20 times since 1988 and says that on several occasions has remained in this State for as much as one month at a time. He further avers that he maintains an active checking account in Maryland, invests all his personal finances here, engages professionals here, invests here, and files Maryland income tax returns. Finally, Defendant claims to possess a Maryland driver's license and appears—albeit quite recently—to have established a voting residence in this State.

#### III.

A) Against this factual backdrop, the parties are in disagreement over who has the

burden of proof as to Defendant's citizenship and what effect certain presumptions should have on the issue. Both agree that Plaintiff has the initial burden of proof, but thereafter they diverge with regard to the effect of the presumptions. Plaintiff contends that, by proving Defendant's residence in North Carolina, he has fulfilled his burden of proof. Defendant argues, to the contrary, that his original Maryland domicile is presumed to continue and that Plaintiff can only overcome this presumption by proving a change of domicile by clear and convincing evidence.

■ B) A brief exposition of the law relative to diversity jurisdiction is in order. It is well established, under 28 U.S.C. § 1332, that this Court may not exercise diversity jurisdiction if Plaintiff and Defendant are citizens of the same state. *See Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 373–74, 98 S.Ct. 2396, 2402–03, 57 L.Ed.2d 274 (1978); *Stevens v. Morrison–Knudsen, Saudi Arabia Consortium,* 576 F.Supp. 516, 524 (D.Md.1983), *aff'd,* 755 F.2d 375 (4th Cir. 1985). Although there is no statutory definition of an individual's state of citizenship, courts have held that it is the state of the individual's domicile, *i.e.* the state he considers his permanent home. *See Gilbert v. David,* 235 U.S. 561, 569, 35 S.Ct. 164, 166–67, 59 L.Ed. 360 (1914); *Galva Foundry Co. v. Heiden,* 924 F.2d 729, 730 (7th Cir.1991).

■ An individual, moreover, acquires a "domicile of origin" at birth, which continues until a new one is acquired. *See Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 48, 109 S.Ct. 1597, 1608, 104 L.Ed.2d 29 (1989). A person is presumed to retain the domicile with which he was born unless it can be shown that he has established a new domicile. *See National Artists Management Co. v. Weaving,* 769 F.Supp. 1224 (S.D.N.Y. 1991). Significantly, although a person may have more than one residence, he may only have one "domicile" for purposes of determining subject matter jurisdiction. *Williamson v. Osenton,* 232 U.S. 619, 34 S.Ct. 442, 58 L.Ed. 758 (1914).

■ When establishment of a new domicile is at issue, it is determined by two factors: residence in the new domicile and intention to remain there. *See Mississippi Band of Choctaw Indians,* 490 U.S. at 48, 109 S.Ct. at 1608 (1989). Accordingly there must be both a change of residence and an intent to remain at the new residence indefinitely; the old domicile continues even when there is a change of residence until there is an intent to create a new home. *Hakkila v. Consolidated Edison Co.,* 745 F.Supp. 988, 990 (S.D.N.Y.1990). Domicile is not destroyed by mere absence from the domicile state, *see Mitchell v. United States,* 88 U.S. (21 Wal.) 350, 353, 22 L.Ed. 584 (1875), *Korn v. Korn,* 398 F.2d 689 (3rd Cir.1968), *Willis v. Westin Hotel Co.,* 651 F.Supp. 598, 603 (S.D.N.Y. 1986), nor by itself is physical presence in a new location sufficient to support a finding of change of domicile, *see Boston Safe Deposit & Trust Co. v. Morse,* 779 F.Supp. 347, 349 (S.D.N.Y.1991).

Wright, Miller and Cooper, Federal Practice and Procedure: Jurisdiction 2d, § 3612 summarizes the factors relevant to the determination of domicile when the matter is in doubt:

Factors frequently taken into account include: current residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; memberships in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; payment of taxes; as well as several others. No single factor is conclusive. (Citations omitted)

C) In the case at bar, Plaintiff claims that, while ordinarily he would have the burden of proving domicile for diversity jurisdiction purposes, Defendant's physical location in North Carolina is prima facie evidence that Defendant is a citizen of that State. In particular, Plaintiff says that proof of this fact shifts the burden to Defendant to prove his domicile and citizenship in some State other than North Carolina, citing inter alia *Granite Trading Corporation v. Harris,* 80 F.2d 174 (4th Cir.1935).

Defendant, for his part, invokes a different "presumption" to the effect that an established domicile is favored against an alleged-

ly newly acquired one, the consequence of which is to put a heavier burden on Plaintiff than would be placed upon him if he were trying to show a retention of an existing or former domicile. *See generally* Wright, Miller and Cooper, § 3612.

The Court examines these arguments.

First, it is clear that the burden of persuasion is always on the party seeking to invoke the jurisdiction of the federal court, in this case Plaintiff. *See Sligh v. Doe,* 596 F.2d 1169 (4th Cir.1979). At most, Plaintiff's proof that Defendant physically resides in North Carolina may shift the burden of producing evidence to Defendant, *i.e.* he runs the risk of an adverse finding if he stands mute, but in no sense does it shift the burden of persuasion. *Id.; see also* Federal Rule of Evidence 301; *McCormick on Evidence* (4th Ed), § 344.

Defendant's apparently conflicting "presumption"—that an established domicile is presumed to continue as against a newly acquired one—goes to both the burden of production and, if not to the burden of persuasion, at least to its quantum. This "presumption" does not come into play until Defendant produces evidence suggesting a bona fide question of domicile; thereafter, it does have the effect, as Defendant maintains, of shifting the burden of production back to Plaintiff as well as putting Plaintiff to a heavier burden of persuasion that Defendant's domicile has in fact changed. *See* Wright, Miller and Cooper, § 3612. Virtually all courts, under these circumstances, have set the standard of proof at the clear and convincing level. *See e.g. Hakkila,* 745 F.Supp. at 990 (citing cases).

Ultimately, however, it may be questioned whether either party is asserting a true evidentiary presumption in this case in the sense that, upon proof of the basic fact and in the absence of evidence to the contrary, a second fact is necessarily presumed. *See McCormick,* § 342; McLain, Maryland Evidence, § 301.1(e). Rather, what actually appear to be involved are no more than "permissible inferences" wherein, upon proof of a basic fact, the burden of production is met as to a second fact, but that second fact

need not necessarily be inferred from the first. *See* McLain, Section 301.4. For instance, Plaintiff's proof of Defendant's residence in North Carolina permits, but does not require, the inference that Defendant is domiciled there, a proposition eminently sensible in this "age of second homes and speedy transportation," *Galva,* 924 F.2d at 930. For the same reason, Defendant's proof that he has a continuing nexus with Maryland despite physical residence in North Carolina, while permitting the conclusion that he is still domiciled in Maryland, does not necessarily compel that inference. Amidst all this, it is worth noting that both Plaintiff and Defendant adduce a considerable number of facts which, in addition to those said to give rise to the respective "presumptions", also tend to favor or disfavor a finding that Defendant is domiciled in North Carolina. Thus, even if one takes the view that the basic facts cited by the parties lead to "presumptions" of domicile, such presumptions would tend to cancel each other and the aggregate of all the facts bearing on jurisdiction would be taken into account. *See* FRE 301; McLain, 301.2, 301.5.

Summing up, then, Plaintiff must shoulder the burden of persuasion on the issue of diversity of citizenship throughout and, given the obvious dispute over whether Defendant's domicile has in fact changed, must persuade by the requisite clear and convincing standard. For now, however, the Court is satisfied that no "presumption" of fact entitles either party to prevail on the diversity question as a matter of law.